Victor Garland WORKS and Lois Works, Individually and as Next Friends for Minor Child "Baby Doe" and Guardian Ad Litem, Holly Hale Gotcher, Appellants,

v.

ARLINGTON MEMORIAL HOSPITAL, Appellee.

No. 05–89–00525–CV.

Court of Appeals of Texas, Dallas.

Dec. 14, 1989.

Rehearing Denied Jan. 16, 1990.

Ben C. Martin and Ralph C. Jones, Dallas, for appellants.

Ernest Reynolds, III, Fort Worth and Harold Curtis, Greenville, for appellee.

Before WHITHAM, ROWE and BURNETT, JJ.

## OPINION

WHITHAM, Justice.

On appeal, we deal with a negligence action brought by appellants, Victor Garland Works and Lois Works individually and as next friends for minor child "Baby Doe" against the appellee, Arlington Memorial Hospital. Appellant, Holly Hale Gotcher, as guardian ad litem for the minor child appeals also. We refer to all appellants as "the Works." In their sole point of error, the Works contend that the trial court erred in granting the hospital's motion for summary judgment and dismissing the Works' claims against the hospital. We disagree. We conclude that the hospital established as a matter of law that at least one element of the Works' cause of action—proximate cause—does not exist. Accordingly, we affirm.

### Procedural Background

Victor Garland Works and Lois Works, individually and as next friends for their minor adopted child "Baby Doe," brought this lawsuit for injuries sustained by "Baby Doe," while the child was in the possession

of Mr. and Mrs. "X." "Baby Doe," along with the Works, is a real party in interest in these proceedings. Several parties, including the hospital, were named as defendants in the lawsuit seeking recovery for the child's injuries. The hospital filed a motion for partial summary judgment which the trial court granted, and which dismissed all claims by the Works against it. The trial court severed the Works' action against the hospital from the claims against the other defendants in the case. Thus, the partial summary judgment is a final, appealable order. Therefore, this appeal seeks reversal of the trial court's order granting the hospital's motion for summary judgment. In spite of other alleged causes of action in the Works' trial pleadings, this appeal involves common law negligence only. We know this because close study of the Works' brief reflects that negligence is the only cause of action discussed or asserted by the Works in this appeal. Therefore, we dispose of this appeal in the context of asserted negligence. To describe the Works' negligence allegations as to the hospital's duty and breach of that duty, we quote the Works' brief, omitting citations to the record:

> Arlington Memorial Hospital records and bills, available to the hospital employees at the time of Baby Doe's birth, indicated that [an attorney at law] had agreed to be responsible for the biological mother's hospital expenses and that the child was to be put up for adoption. Though this information was known, the hospital failed to refer the biological mother to any proper child placement agency or social service agency. After its birth, the child was taken from the hospital grounds by [the attorney] and persons from [his] office. Hospital personnel were present at the time the [attorney] group took the baby. After being turned over to [third parties] by [the attorney], the baby was severely abused. The hospital failed to involve its own social work department at any point while the natural mother was in the hospital. The hospital failed to investigate the circumstances surrounding the discharge of the biological mother. The hospital failed to

ascertain that proper conservatorship papers were held by those persons taking the baby from the hospital grounds. It is asserted that had the hospital acted properly, the opportunity would not have arisen for the child to be abused.

Duty and breach of duty aside, we focus on proximate cause.

### Background Legal Principles Involved

The motion for summary judgment shall state the specific grounds therefor. Tex.R.Civ.P. 166a(c). The hospital's motion for summary judgment states that "[t]here is no evidence in this case to establish negligence, negligence per se, gross negligence, *or proximate cause* in connection with any claims (whether made by [the Works] or a cross-claimant) against [the hospital]." (emphasis added). We conclude that this statement meets the requirements of rule 166a(c) that a movant state the specific grounds for summary judgment as applicable to proximate cause, *i.e.,* want of proximate cause so as to establish as a matter of law that at least one element of the Works' cause of action—proximate cause—does not exist. Consequently, we find no merit in the Works' argument that the hospital failed to specify grounds for summary judgment. Certainly, proximate cause is an element of negligence. To sustain a cause of action for negligence it is necessary to produce evidence of a duty, a breach of that duty, proximate cause and damages. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). Proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact. Both elements must be present and may be established by direct or circumstantial evidence. Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force. Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *McClure v.*

*Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980).

In an appeal from summary judgment, the question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Therefore, a defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of plaintiff's cause of action does not exist. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). Hence, our focus on proximate cause narrows to foreseeability and a reasonably close causal connection between the defending hospital and the minor child's resulting injury. *See Cloys v. Turbin,* 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ). Thus, we reach the factual background established by the undisputed facts in the summary judgment proof which centers on the hospital's assertion that it has successfully negated the essential element of the Works' cause of action for negligence—proximate cause.

### Factual Background

■ We begin by noting a particular circumstance in the parties' presentation of the facts. Pleadings, even if sworn, cannot be regarded as summary judgment evidence. *See Hidalgo v. Surety Savings and Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971). The Works' trial pleadings appear in the transcript at pages 7–59. Both the Works and the hospital, however, rely, under their statements of facts in their briefs, upon certain factual statements in the Works' trial pleadings. Therefore, we treat that part of the hospital's statement of facts citing to the Works' trial pleadings as presenting undisputed facts to this Court. Hence, in the facts summarized below, we reproduce the hospital's transcript references from its brief to identify facts derived from that source. The

Works' references to their trial pleadings do not differ in substance from factual summaries made by the hospital.

The "Mother" was pregnant and sought medical care from Dr. _____, M.D., in the summer of 1986. (Tr. 9.) She also asked him for a referral to someone who could help her place her child for adoption. (Tr. 9.) Dr. _____ referred her to Attorney _____. Dr. _____ continued to provide medical care for the mother until and through the time Baby Doe was born. (Tr. 9.) Baby Doe was born to Mother on October 3, 1986, at the hospital in Arlington, Tarrant County, Texas. (Tr. 9, 10.) Attorney _____ and his firm had been in contact with Mr. and Mrs. "X" as early as January, 1985, about a prospective adoption placement. (Tr. 9.) Attorney _____ and his firm were going to place Baby Doe with the "X"s and the "X"s provided some funds to the attorneys. (Tr. 10.) Attorney _____'s law firm paid the medical bills in connection with the birth, including those of the doctor and the hospital. (Tr. 10.)

After the birth, Mother signed for the baby's release and took the baby in the wheelchair with her to the door of the hospital. After Mother was outside of the door of the hospital, she turned the baby over to Attorney _____ (not taken from the Works' trial pleadings but otherwise in the summary judgment proof), who then delivered Baby Doe to Mr. and Mrs. "X." (Tr. 10.) The child was in the care, custody and control of Mr. and Mrs. "X" until December 23, 1986. (Tr. 11.) On December 23, 1986, Mr. and Mrs. "X" took Baby Doe to a different medical facility (Tr. 12.), and it was discovered that the child had sustained serious personal injuries as a result of abuse on more than one occasion during the time period it was in the custody of Mr. and Mrs. "X." (Tr. 11.) Thus ends the reading from the Works' trial pleadings.

During all relevant or applicable times, absolutely no legal proceedings regarding conservatorship, guardianship, adoption, placement, or termination of parental rights of Mother, or court proceedings pertaining to Mother, Mr. and Mrs. "X", or Baby Doe were instituted by parties in-

volved in this litigation. Mother testified during her deposition that so far as she was aware, nobody affiliated with the hospital had any involvement in the adoption of Baby Doe. No one at the hospital attempted to influence Mother in connection with her decision about the adoption. She did not rely upon any of the personnel at the hospital to help her accomplish the goal of adoption. Mother did not know why the hospital was involved in this lawsuit and she "had ... no qualms with the hospital...." She said that the people at the hospital "did an excellent job." Baby Doe was released by the hospital to the custody of Mother, when she left the hospital. The baby was released by the hospital to her, not a third person; and Mother was the person who placed the baby in the custody of "one of [the attorney's] assistants." There were people with Attorney ———, but they were not hospital personnel, and Mother saw all of these people "get in the car and leave together."

The deposition testimony of Mrs. "X" shows that neither she, nor her husband, had any contact with any of the hospital personnel. They were not given any information about the hospital or its personnel. The deposition testimony of Attorney ——— shows that he did not have any working relationship with anyone from the hospital, and he had not had any previous arrangements with the hospital regarding prospective placement for newly born infants. Although his firm did pay the hospital bill in connection with hospital services provided at the time of the birth of Baby Doe, these arrangements were not made by Attorney ———, but by a secretary. In connection with the birth and placement of Baby Doe, Attorney ——— went to the hospital on only one occasion, the day the mother and child were discharged. Upon Attorney ———'s arrival, he offered to pay Mother's bill, but employees in the cashier's office could not find the account and therefore did not request payment. This was Attorney ———'s only contact with employees or representatives of the hospital.

Wayne Clark is the senior vice president at the hospital. Clark's deposition establishes that the hospital never functioned as an adoption agency. The hospital does not provide any counseling relative to the adoptive process. The hospital is not a licensed adoption agency and in view of this, hospital policies and procedures provide, and have provided, that the hospital should not and will not become involved in the adoptive procedure in any way except to provide hospital services for medical needs of the mother and baby and to protect the confidentiality of any records related to the adoption. Other policies and procedures at the hospital provide that the natural mother retains all her parental rights over the baby until such time as a managing conservator has been appointed by the court. Under the policies and procedures of the hospital, when a managing conservator has not been appointed, the natural mother retains full parental rights and control over her baby, and the hospital has no right to take any action with regard to the control of the newborn unless it is pursuant to or in agreement with the directions of the natural mother. The hospital chart of Baby Doe includes a "discharge Record" which indicated that the baby was discharged "with parent," and also includes a newborn identification which contains a certificate signed by Mother, the biological mother, indicating that she received her baby.

Since proximate cause is our issue, we note with particular interest certain deposition testimony of the Works' asserted expert witness, Lisa Overbey. Indeed, the hospital relied on certain portions of Overbey's testimony as summary judgment evidence negating proximate cause. From the Works' brief, we learn that Overbey holds a master's degree in social work, is director of social work for St. Paul Medical Center in Dallas, Texas, is directly involved in the day-to-day functions of hospital personnel handling situations at a hospital where mothers give up their natural children for adoption, is a member of the Texas Society for Hospital Social Work Directors, which meets frequently to discuss the hospital procedures involved in attending to mothers giving up their children for adoption, and is familiar with the hospital standard

of care in her community in circumstances such as those in this case. The Works rely upon Overbey's testimony as that of a qualified expert to establish that the hospital violated the standard of care required by a hospital in protecting an "adoptive" child born in the hospital. The Works assert that Overbey testified as to the standard of care and that the hospital violated the standard. At this point, we emphasize that we dispose of this appeal on the issue of proximate cause and not issues of duty and breach of that duty. Nevertheless, we conclude that the deposition of Overbey, a witness sponsored by the Works as an expert, contains undisputed facts bearing on the issue of proximate cause.

The Overbey testimony relied upon by the hospital as summary judgment evidence negating proximate cause follows. Overbey admitted that a hospital is not supposed to be able to see the future like a fortune teller with a crystal ball; that she was not capable of seeing the future like a fortune teller with a crystal ball—that even she could not have predicted, based on the type of information available at the time the child, Baby Doe, left the hospital, that it would be mistreated in the way it allegedly was according to the Works' pleadings. Further, Overbey went so far as to say she "wouldn't have tried to" make such predictions. Overbey agreed that for any two people to take a little, innocent baby and beat it up would be aberrational and abnormal behavior and that it would be unforeseeable to her, or to anybody, including the people at the hospital where she works, that this would occur.

### Proximate Cause

■ Foresight should not be arbitrarily imputed. *Genell, Inc. v. Flynn*, 163 Tex. 632, 638, 358 S.W.2d 543, 547 (1962). The test as to whether a given act may be deemed the proximate cause of an injury is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the act. *Genell, Inc.*, 163 Tex. at 638, 358 S.W.2d at 547. In the present case, we conclude as a matter of law that, in light of all the attending circumstances shown in the summary judgment proof, the injuries suffered by the minor child, Baby Doe, could not reasonably have been anticipated by the hospital as a consequence of any asserted negligent act or omission alleged against it. In short, we conclude that the hospital could not have foreseen the danger to Baby Doe. Moreover, we conclude as a matter of law that no asserted negligent act or omission alleged against the hospital was a substantial factor in bringing about the injuries to Baby Doe and without which no harm would have occurred to Baby Doe. *See McClure*, 608 S.W.2d at 903.

It follows that the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one of the essential elements of the Works' cause of action; to wit: proximate cause. It follows further, therefore, that the hospital has established as a matter of law that at least one element of the Works' cause of action does not exist; to wit: proximate cause. Consequently, we conclude that the hospital has successfully negated an essential element of the Works' cause of action for negligence—proximate cause. We conclude further, therefore, that the trial court did not err in granting the hospital's motion for summary judgment and dismissing the Works' claims against the hospital. We overrule the Works' sole point of error.

In light of our disposition of this appeal on the issue of proximate cause, we need not reach the Works' argument that the summary judgment proof establishes a fact issue as to the existence of a duty on the part of the hospital and a breach of that duty by the hospital. Hence, the Works' argument concerning the testimony of their asserted expert witness, Lisa Overbey, as to duty and breach of duty falls outside the decisive issue.

Affirmed.