# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00295-CV

**Cynthia A. Smith, Appellant**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-11-001646, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Cynthia A. Smith appeals the trial court's summary judgment in favor of the City of Austin on her claims that the City violated the Americans with Disabilities Act (ADA) and the Texas Commission on Human Rights Act (TCHRA) in terminating her employment. For the following reasons, we affirm the trial court's judgment.

Smith filed a lawsuit against the City alleging that it failed to provide a reasonable accommodation for her disability—major depression and anxiety disorder—and instead terminated her employment as assistant payroll manager after she failed three times within eleven months to timely submit the City's federal income-tax liability to the IRS, resulting in the City incurring a large tax penalty (which was later abated). The City filed a combined no-evidence and traditional motion for summary judgment, asserting that Smith failed to establish a prima facie case for discrimination by failure to accommodate. The trial court granted the City's summary-judgment

motion without specifying the basis for its decision. We will, therefore, affirm if any of the grounds asserted in the City's motion has merit. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

When, as here, a party moves for summary judgment on both traditional and no-evidence grounds, we first review the trial court's decision under the no-evidence standard. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (explaining that if nonmovant fails to produce legally sufficient evidence to meet burden for no-evidence motion, there is no need to analyze whether movant satisfied burden under traditional motion). When a movant files a no-evidence summary-judgment motion stating the elements of the nonmovant's claim on which there is no evidence, the burden shifts to the nonmovant to present or identify summary-judgment evidence raising a genuine issue of material fact on the specified elements. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary-judgment motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on each ground where the nonmovant bears the burden at trial and that is raised in the summary-judgment motion. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70-71 (Tex. App.—Austin 1998, no pet.). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

To establish a prima facie case for an employer's failure to accommodate a disability, a plaintiff must show that (1) she is a qualified individual with a disability, (2) the disability and

2

its consequential limitations were known by the covered employer, and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist v. Louisiana, Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). The threshold issue in a plaintiff's prima facie case is a showing that she suffers from a disability, *see Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999) (per curiam), which the ADA and TCHRA define in relevant part as "a physical or mental impairment that substantially limits one or more major life activities of such individual," *see* 42 U.S.C. § 12102(1)(A); Tex. Lab. Code § 21.002(6). Major life activities include concentrating, thinking, and working. 42 U.S.C. § 12102(2)(A). The City challenged all three elements of Smith's prima facie case in its summary-judgment motion.[1]

The City argues that the summary-judgment record entitled it to judgment as a matter of law because there is no evidence that Smith informed the City of any limitations caused by her mental illness or that, accordingly, the City knew that she was "disabled" as defined in the ADA. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 163-64 (5th Cir. 1996) (to prove discrimination in failure-to-accommodate case, plaintiff must show that employer knew of her substantial physical or mental limitation). "[I]t is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Id.* at 164. "[T]he ADA requires employers to reasonably accommodate limitations, not disabilities." *Id.* "This is a critical distinction, because the existence vel non of a disability or impairment is material to a reasonable accommodation claim only insofar

---

[1] Because the language of the TCHRA tracks the ADA, if summary judgment is appropriate on a plaintiff's ADA claims, it is also appropriate on her TCHRA claims. *See Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 752 (S.D. Tex. 2001).

as it limits an employee's ability to perform his or her job." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997).

Smith's lawsuit asserts that her depression substantially limits her major life function of concentration. However, it was her burden to identify evidence supporting her assertion that her impairment indeed substantially limits that major life activity and that she informed the City of such limitation prior to her termination. *See Taylor*, 93 F.3d at 163-64; *see also* 42 U.S.C. § 12112(b)(5)(A) (term "discriminate" includes not making reasonable accommodations to *known* physical or mental limitations of otherwise qualified individual with disability). It is especially important that an employee notify her employer of her specific limitations where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved. *Taylor*, 93 F.3d at 165-66 (noting public policy dictates presumption that disabled employees are *not* limited in their abilities to perform their jobs and that capabilities of qualified individuals are to be determined on case-by-case basis). After our review of the record, we must agree with the City and hold that the trial court properly granted summary judgment on the basis that there is no evidence that the City knew Smith had any limitations that are covered by the ADA.

The summary-judgment evidence indicates that Smith made various vague representations to the City about how her mental illness *might* affect her job performance but presented no evidence that she was, in fact, limited in her ability to concentrate due to the condition. Despite various attempts by the City to glean from Smith possible reasons for her tax-payment failures, Smith did not mention that she suffered from depression or that it may have impaired her

concentration until after she received a pre-termination letter from the City on November 9, 2009 requesting further information to be considered in making the final termination decision. In reply, Smith submitted a letter stating,

> I believe that my lack of adherence to every detail in my work is a result of my mental health. As can be seen from the attached letter from my doctor, I have been struggling with depression for over two years. A sign of depression is lack of concentration. Even through my illness, I have sought to remain a positive producing employee. I hope you will take this crucial information into consideration as you deliberate my fate with the City.

Her attached doctor's note stated, "Cynthia Smith has been under my care for the treatment of depression and anxiety since September 2006. Her depression has not been fully controlled for about 18 months. This has resulted in several medication changes and adjustments without a full response. Please take this into consideration in evaluating her work performance."

Shortly thereafter, Smith submitted another letter to the City listing the reasons why her employment should not be terminated. Among them was the following:

> I have a medical condition which *could affect* my work performance and contribute to the payroll tax oversights. I provided you with a letter from my doctor stating that I have been under his care for 3 years and have recently been changing several medications which *could impair* my job performance. I have made payroll tax deposits for the last several years with no issues until the past 10 months. . . . My recent medical condition and medication changes *could be a major contributor* to my oversights. (Emphases added.)

Then, on December 1, 2009, Smith and her attorney, Stephen Moss, attended a pre-termination meeting with several City representatives. Moss's affidavit avers that at that meeting, he "advised" the City representatives that Smith "suffered from depression and anxiety to the extent

5

that these conditions affected major life functions, and I requested a reasonable accommodation for these disabilities, suggesting that one such accommodation might be to transfer Cynthia Smith to another position rather than terminating her. I also cited them to review the Americans with Disabilities Act. . . . During the hearing Cynthia Smith stated her disabilities and request for a reasonable accommodation." Notably, Moss's affidavit does not identify which "major life functions" were "affected" by Smith's mental condition and does not specify how any particular major life activity is limited. The record also contains Smith's deposition and affidavit, but neither of those documents provides any factual detail about what Smith communicated to the City about her limitations. Furthermore, there is no evidence that any doctor has ever placed any limitations on Smith's work or identified any major life activities that are substantially limited by her mental illness.

The City terminated Smith's employment, effective January 8, 2010. Yet, Smith identifies a letter the City filed with the IRS on January 19, 2010 seeking to abate the penalty incurred due to Smith's tax-payment failure as evidence of the City's knowledge of her limitations.[2] The letter explains the payment failure as partly due to Smith's "major depressive disorder," "a common symptom [of which disorder] is difficulty in concentration or forgetfulness in attending to the particular." This medical condition, the letter continues, "is a significant proximate cause to the employee's failure to make the deposit." City representatives testified that outside tax counsel prepared the letter and included the information about Smith's depression because of counsel's

---

[2] Although the IRS letter was filed after Smith's termination, we will view it in a light most favorable to Smith and therefore consider it as demonstrative of what the City knew about Smith's limitations just prior to terminating her, absent evidence indicating a change in the City's awareness of her limitations during this brief post-termination period.

6

awareness that the IRS "sometimes recognizes illness as a good cause." Smith argues that this letter belies the City's contention in this lawsuit that it was not aware of the limitations resulting from her disability prior to terminating her. We disagree. Viewing the IRS letter in the light most favorable to Smith, it does not add anything of significance to what the other evidence already discussed implies about the City's alleged "knowledge" of Smith's actual and specific limitations. Although the City sought to avoid the tax penalty by claiming in this letter that Smith's mental condition "caused" the missed payments, the letter fails to attribute to Smith any specific limitations on concentration or other major life functions, merely generically citing common "symptoms" of the condition.

At the time the City was considering terminating Smith's employment, she had asserted no more than general implications that her depression *might* be "affecting" her concentration and that "a symptom" of depression is a lack of concentration, without any specific indication that her personal concentration or another major life activity was indeed limited by the mental illness. Additionally, Smith presented no evidence supporting how her alleged limitations of any major life activities actually manifested, either in the instances of the three missed IRS payments or in any other scenario.[3] Although, as Smith points out, the term "substantially limits" should be construed broadly in favor of expansive coverage of employees, *see* 29 C.F.R. § 1630.2(j)(1)(i) (Equal Emp't Opportunity Comm'n, Definitions), courts must nonetheless make an individualized inquiry into whether the employee has identified any specific limitations due to the disability, *see Burch*,

---

[3] City employees testified that their understanding of why Smith sought to be relieved of the task of making IRS payments, which is what she claims to have proposed as a "reasonable accommodation" for her disability, was because she no longer wanted to perform that task because it was "stressful" and she had "issues remembering" to make the payments, not because she was unable to perform it.

119 F.3d at 315-16 (holding that employee's alcoholism did not on its own prove that he suffered from substantially limiting impairment), and "not every impairment will constitute a disability within the meaning" of the ADA, *see* 29 C.F.R. § 1630.2(j)(1)(ii).

On this record, we must conclude that Smith has failed to adduce summary-judgment evidence that would allow a reasonable trier of fact to find that the City knew of any limitations arising out of Smith's asserted impairment. *See Taylor*, 93 F.3d at 163-64 (employee's informing employer that he suffered from bipolar disorder and request for lessening of pressure and reduction in objectives held insufficient evidence to meet burden of informing employer of limitation); *Burch*, 119 F.3d at 315-16 (employee's doctor testified only in general terms about alcoholics as class rather than to individualized limitations of employee). The facts that Smith suffered from depression, that a sign of depression generally is a lack of concentration, and that Smith's depression "could affect" her work performance are insufficient to support her ADA and TCHRA claims, especially in light of the fact that Smith's employment record indicated that she was able to and did adequately perform the other aspects of her job, including even timely completing the tax-payment task the majority of the time except for these three instances. "A plaintiff cannot survive summary judgment by showing that an impairment like his own *could* substantially limit a major life activity of another person or in his own future. Rather, he must show that his impairment has *actually* and substantially limited the major life activity on which he relies." *Waldrip v. General Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (emphases added).

We hold that on this record, there is no evidence to support Smith's prima facie case on the element of the employer's knowledge of her alleged limitation. Accordingly, the trial court

8

did not err in granting the City's motion for no-evidence summary judgment and, accordingly, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   September 30, 2014

9